IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:21-cr-39 |
| JULIE ANN JOHNSON, | ) | |
| AUSTIN JOHN DUDENHOEFER, | ) | |
| and BOBBY LEE RAINEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Pending before the Court in the above-captioned matter are motions by Defendants Julie Ann Johnson, Austin John Dudenhoefer, and Bobby Lee Rainey ("Moving Defendants") to sever their cases from those of the other named defendants. The Government has responded and, following oral argument, the parties had an opportunity to file supplemental briefs. The matter is now ripe for adjudication. For the reasons that follow, the motions will be denied.

## I.      BACKGROUND

On November 9, 2021 a grand jury in the Western District of Pennsylvania returned a two-count indictment against Hertel & Brown Physical and Aquatic Therapy ("Hertel & Brown") and twenty (20) individuals affiliated with Hertel & Brown for alleged health care fraud and conspiracy to commit wire and health care fraud. Among those named in the indictment were Defendants Julie Ann Johnson ("Johnson"), Austin John Dudenhoefer ("Dudenhoefer"), and Bobby Lee Rainey ("Rainey"). On May 10, 2022, the grand jury returned a superseding

1

indictment, which added certain allegations but did not change the named defendants or the offenses alleged.  ECF No. 425.

The superseding indictment generally alleges that, between January 2007 and October 2021, the Defendants participated in a scheme whereby false or inflated billing statements were routinely submitted to various public and private health care insurers to obtain payment for services that were not authorized or were not actually rendered to Hertel & Brown's patients in the manner described.  ECF No. 425, ¶23.  In some cases, it is alleged, bills were submitted for services supposedly rendered by licensed physical therapists or physical therapist assistants, when in fact the underlying treatment had been provided by unlicensed technicians or aides who were not authorized to provide, and be reimbursed for, the services in question.  ECF No. 425, ¶¶ 42, 43, 48.  With respect to certain insurers like Tricare who only paid for treatments provided by licensed physical therapists, the Defendants allegedly submitted or caused to be submitted billing statements which falsely indicated that a physical therapist had provided the treatment in question when, in fact, the treatment had been rendered by physical therapist assistants or unlicensed technicians.  Id., ¶ 51, 52.  In other cases, bills were allegedly submitted for treatment times in excess of the time actually spent with the patients.  *Id.* at ¶¶44, 45.  As an example, the Government asserts that group treatment sessions were sometimes billed out as multiple one-on-one treatment sessions, or billing claims were submitted for treatment hours in excess of what the employee could possibly have provided in the course of that day.  *Id.*  The superseding indictment also outlines numerous instances where billing statements utilized the name and credentials of Hertel & Brown physical therapists who were on vacation or otherwise out of the office at the time of the treatment for which payment was sought.  *Id.* ¶49.  It is further alleged that the Defendants rarely utilized group billing codes, even in circumstances where such codes

were the only appropriate option, *id.* at ¶¶55-56, and/or Defendants would submit bills using codes with higher reimbursement rates that did not correspond with the treatment provided. *Id.* ¶59. According to the Government, the conspiracy to commit wire fraud and health care fraud resulted in losses of at least $22 million to the medical insurance companies that were allegedly defrauded. *Id.* ¶76.

As mentioned, Johnson, Rainey, and Dudenhoefer have all separately moved for a severance of their charges. Because the arguments of these Moving Defendants largely overlap, they will be outlined *seriatim* but addressed collectively.

Johnson was a licensed physical therapist who worked at Hertel & Brown's office in the West Erie Plaza. Johnson seeks to have her charges severed from the charges against Hertel & Brown, Aaron Hertel, Michael Brown, Patricia Susan Berchtold, and any other co-Defendants that may have been involved in the company's ownership, management, and billing. To that end, Johnson argues that the joinder of her counts with those of other co-Defendants, some of whom have a greater degree of culpability, will compromise her right to a fair trial. Johnson further contends that the admission of statements made by co-Defendants at trial will violate her rights under the Confrontation Clause of the Sixth Amendment.[1]

---

[1] Johnson initially argued, as additional grounds for a severance, that she is prepared to go to trial within the statutory period, whereas her co-Defendants are not; therefore, her right to a speedy and fair trial would be substantially prejudiced if all counts against her are not severed from those against the others. Following the Government's filing of the Superseding Indictment and production of additional discovery, however, Johnson sought (and obtained) an extension of her deadline for filing pretrial motions. In light of these developments, she now moves to withdraw her "speedy trial" argument as a basis for her pending severance motion. In so moving, Johnson does not intend to waive her right to move for severance at a later point in time, based on her right to a speedy trial, should such action become warranted. Upon consideration of the matter, the Court will grant Johnson's request. Accordingly, Johnson's "Motion to "Withdraw in Part her Motion to Set Trial Within the Statutory Period and Sever All Counts as to Her for Separate Trial, ECF No. [499], will be granted.

Rainey posits that she is similarly situated to Johnson, whose arguments in favor of severance she generally adopts.  Rainey was a licensed physical therapist at Hertel & Brown and held the title of Facilities Director but, like Johnson, she claims to have played no role in billing policy, the formulation of company-wide policies and practices, document management practices and policies, or the alleged improper bonus structures at Hertel & Brown.  Rainey argues that, if she is tried with the other co-Defendants, her right to a fair and speedy trial will be substantially prejudiced.

Dudenhoefer was employed by Hertel & Brown first as a part-time Physical Therapy Technician and then as a full-time physical therapist.  He represents that he is ready and willing to proceed to trial within the statutorily allotted time period but fears that he will be prejudiced by a joint trial in at least three respects.  First, Dudenhoefer claims that statements made by certain co-Defendants, if offered against them at trial, will substantially and incurably prejudice him to the extent those statements directly or indirectly implicate him in their conduct.  Second, Dudenhoefer asserts that he will necessarily be prejudiced by the "spillover effect" of "substantially more and stronger evidence against certain co-Defendants" -- including potentially sensational evidence that Defendants Aaron Hertel and Michael Brown took exotic vacations and owned yachts, luxury cars, and expensive homes.  Third, Dudenhoefer states that a lengthy delay before trial will further erode his good reputation, which has already been damaged by the pending criminal charges and will impair his ability to practice as a physical therapist elsewhere.

## II.    GOVERNING LEGAL PRINCIPLES

Federal Rules of Criminal Procedure 8 and 14 "are designed to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial."  *Bruton v. United States*, 391

4

U.S. 123, 131 n.6 (1968).  Rule 8 governs the joinder of offenses or defendants in a common

indictment.  The rule states, in relevant part, that

> [t]he indictment or information may charge 2 or more defendants if they are alleged
> to have participated in the same act or transaction, or in the same series of acts or
> transactions, constituting an offense or offenses. The defendants may be charged in
> one or more counts together or separately. All defendants need not be charged in
> each count.

Fed. R. Crim. P. 8(b).  Rule 14, on the other hand, addresses severance and provides that, "If the

joinder of offenses or defendants in an indictment, an information, or a consolidation for trial

appears to prejudice a defendant or the government, the court may order separate trials of counts,

sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P.

14(a).

      As a general matter, "the federal system prefers 'joint trials of defendants who are

indicted together [ ]' because joint trials 'promote efficiency and serve the interests of justice by

avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Urban*, 404 F.3d

754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (alteration in

original)).  Joinder is especially favored in cases where defendants have been charged with

engaging in a common conspiracy.  *See United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir.

1991) (where "all appellants were charged with the same conspiracy to participate in the same [ ]

enterprise, the public interest in judicial economy favored joinder").  Apart from the policy

considerations that generally favor joinder, "joint trials of defendants charged under a single

conspiracy aid the finder of fact in determining the full extent of the conspiracy . . . and prevent

the tactical disadvantage to the government from disclosure of its case." *United States v. Voigt*,

89 F.3d 1050, 1094 (3d Cir. 1996) (internal quotation marks and citations omitted). Typically,

"[a] conspiracy charge provides a common link and demonstrates the existence of a common

plan for purposes of Rule 8(b)." *United States v. Thompson*, 219 F. Supp. 3d 502, 507 (M.D. Pa. 2016) (internal quotation marks and citation omitted).  In fact, even when different defendants are charged with different acts, joinder is appropriate so long as the indictment indicates that all the acts charged against each joined defendant were undertaken in furtherance of, or in association with, a commonly charged conspiracy. *Eufrasio*, 935 F.2d at 567; *United States v. Savage*, No. 07-550, 2012 WL 6609425, at *2 (E.D. Pa. Dec. 19, 2012) (citing *Eufrasio*).

Still, a district court may order a severance if the potential prejudice that would result from joinder outweighs the expense and time of separate trials that essentially retry the same issue. *See United States v. Joshua*, 976 F.2d 844, 847 (3d Cir. 1992) ("Severance decisions under Rule 14 require the district court to weigh the potential for prejudice to the defendant from joinder against the conservation of judicial resources that joinder will occasion."), *abrogated in non-relevant part by Stinson v. United States*, 508 U.S. 36 (1993).  Defendants seeking a severance under Rule 14 bear a "heavy burden," *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994), and must "'pinpoint clear and substantial prejudice resulting in an unfair trial.'" *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010); *see also United States v. Scarfo*, Nos. 15-2811, 15-2826, 15-2844, 15-2925, 19-1398, -- F. 4th --, 2022 WL 2763761, at *24 (3d Cir. July 15, 2022) (noting that defendants must clear a "high bar" to obtain a severance). "Severance should only be granted 'if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Riley*, 621 F.3d at 335 (quoting *Urban*, 404 F.3d at 775); *see Zafiro*, 506 U.S. at 539.  And even where joinder presents a risk of prejudice to a particular defendant, severance may not be required, because "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

III.    **DISCUSSION**

A.  Presumptive Appropriateness of Joinder

As an initial matter, the Court finds that the Government's joinder of all Defendants in the subject indictment was appropriate.  As discussed above, joinder is generally favored under the federal rules, particularly when the government has charged a common conspiracy.  *Eufrasio*, 935 F.2d at 567-68.  Under the law of this circuit, the "mere allegation of conspiracy presumptively satisfies Rule 8(b), because it "implies that the defendants named have engaged in the same series of acts or transactions constituting an offense." *United States v. Irizarry*, 341 F.3d 273, 289 n.5 (3d Cir. 2003) (citation and internal quotation marks omitted); *see also United States v. Green*, 563 F. App'x 913, 916 (3d Cir. 2014) (noting that "the existence of a formal conspiracy count typically satisfies the Rule 8(b) standard") (citation omitted); *United States v. Somers*, 496 F.2d 723, 729-730 (3d Cir. 1974) ("'Joinder is permitted of a conspiracy count and substantive counts arising out of the conspiracy, since the claim of conspiracy provides a common link, and demonstrates the existence of a common scheme or plan.'") (quoting Wright and Miller, 1 Federal Practice and Procedure, §144).

In this case, all twenty-one (21) Defendants are alleged to have participated in a common conspiracy to commit wire fraud and health care fraud.  In addition, all Defendants are charged in a single substantive count of health care fraud based upon the same alleged conduct that is charged in the conspiracy count.  As joinder is presumptively appropriate, the Defendants bear a "heavy burden," of "'pinpoint[ing] clear and substantial prejudice" from joinder that would result in an unfair trial. *Quintero*, 38 F.3d at 1343; *Riley*, 621 F.3d at 335.  We address the Defendants' stated concerns below.

B.  Speedy Trial Rights

The Moving Defendants are guaranteed the right to a speedy trial under the Sixth Amendment to the U.S. Constitution, as well as the Speedy Trial Act. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...."); *see also* 18 U.S.C. §3161(c)(1) (stating that, when a plea of "not guilty" is entered, the defendant's trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs").

Here, Defendants Rainey and Dudenhoefer contend that their right to a speedy trial will potentially be violated unless a severance of their charges is granted.[2] They posit that, due to the number of Defendants joined in this case, the length of time covered in the indictment, and the varying degrees of culpability, many of the non-moving Defendants will not be ready for trial in the near future; therefore, joinder of all Defendants jeopardizes their own right to proceed to trial in a timely fashion. These concerns, they argue, strongly outweigh the duplication of evidence that would occur as a result of separate trials.

### 1. Statutory Rights Under the Speedy Trial Act

Congress enacted the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, in order to effectuate the Sixth Amendment's guarantee of a speedy trial. To that end, the Speedy Trial Act requires that a criminal defendant be brought to trial "within seventy days of the filing date ... of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. §3161(c)(1).

---

[2] As discussed, Johnson has withdrawn her "speedy trial" argument only for purposes of her currently pending motion. *See* n. 1, *supra*.

8

At the same time, the Act recognizes several exclusions from this 70-day trial clock. Of particular relevance here are three exclusions. First, Section 3161(h)(1)(D) excludes any delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Second, Section 3161(h)(6), excludes a "reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." Finally, Section 3161(h)(7)(A) excludes any delays resulting from the court's granting of a continuance "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

In this case, both Rainey and Dudenhoefer appeared for their arraignments on December 2, 2021. That same day, a number of co-Defendants moved to extend the deadline for filing pretrial motions. *See* ECF Nos. 225, 226, 256, 257, 258, 259. All of the requested continuances were granted based on the "ends of justice" grounds set forth in Section 3161(h)(7)(A), resulting in periods of delay that do not count against the speedy trial clock. *See* ECF Nos. 227, 228, 260, 261, 262, 263. In fact, nearly all the Defendants in this case have repeatedly sought and obtained extensions of their pretrial motions deadlines on Section 3161(h)(7)(A) grounds.[3] In each case, the Court determined that the continuance was justified because the ends of justice served by the continuance outweighed the best interest of the public and the Defendant in a speedy trial.[4]

---

[3] The Court acknowledges that Dudenhoefer has never requested or obtained an extension of his deadline for filing pretrial motions. Rainey, on the other hand, sought and obtained a 60-day extension of the pretrial motions deadline following her June 2, 2022 arraignment on the superseding indictment. *See* ECF Nos. 507, 508. As a result, Rainey's current deadline for filing pretrial motions is August 15, 2022, and the interim period from June 16, 2022 (i.e. fourteen days following Rainey's June 2, 2022 arraignment) to August 15, 2022 is deemed excludable time pursuant to 18 U.S.C. §3161(h)(7)(A).

9

Thus, for these co-Defendants, no time on the speedy trial clock has actually elapsed.  And pursuant to Section 3161(h)(6), the Court may exclude "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." *See United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) (explaining that, under 18 U.S.C. §3161(h)(6) -- formerly codified as §3161(h)(7) -- "an exclusion applicable to one defendant applies to all co-defendants") (internal quotation marks and citation omitted).  Because Rainey and Dudenhoefer were properly joined with the other individuals charged in this case and because (as we discuss herein) severance is not presently warranted, a "reasonable" amount of delay attributable to the joinder may be excluded from the 70-day trial clocks for Rainey and Dudenhoefer.

At least at this point in the case, the Court cannot say that there has been any "unreasonable" delay for the Moving Defendants based upon their joinder with the other co-Defendants.  The charges in this case concern a conspiracy that allegedly spanned fourteen years and involved multifaceted conduct on the part of at least twenty different individuals.  In support of these charges, the Government has produced extensive discovery, which all Defendants are in the process of reviewing as they prepare their respective defenses and determine whether to seek some form of pretrial relief.  Given the nature and extent of the criminal charges, the Court had ample grounds for concluding that the ends of justice served by the various continuances outweighed the best interests of the public and the Defendants in a speedy trial. Therefore, all of

---

[4] *See, e.g.,* ECF Nos. 225, 227, 338, 352, 396, 401, 427, 433 (Defendant Exley); ECF Nos. 226, 228, 343, 353, 416, 418, 501, 509 (Defendant Bauer); ECF Nos. 257, 261, 328, 356, 430, 450 (Defendant Berchtold); ECF Nos. 184, 185, 335, 357, 391, 392, 422, 445 (Defendant Larmon).

the excludable time that has been attributed to the co-Defendants in this criminal case is also attributable to the Moving Defendants.

Overlapping these permissible delays are other periods of excludable time that are attributable to the parties' filing of certain pretrial motions.  For example, the Government filed a motion for a protective order on December 13, 2021, ECF No. 282, and the instant motions for severance followed three days later.  ECF Nos. 294, 295, 296.  Section 3161(h)(1)(D) excludes from the 70-day trial clock those periods of delay that result from the filing of a pretrial motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  In sum, as matters currently stand, no time has elapsed on the 70-day trial clock that applies to Rainey and Dudenhoefer under the Speedy Trial Act.

The Moving Defendants do not contend otherwise, but instead suggest that violations of the Act will likely occur in the future if severance is not presently granted.  Dudenhoefer, in particular, argues that many Defendants in this case will be incentivized to proceed to trial and that the delay in bringing this case to trial is likely to be exceptionally lengthy.  As the United States Court of Appeals for the Third Circuit has observed, however, the legislative history of Section 3161(h)(6) "illustrates a strong congressional preference for joint trials and an intention that delays resulting from the joinder of codefendants be liberally excluded."  *United States v. Novak*, 715 F.2d 810, 814 (3d Cir. 1983), *abrogated on other grounds by United States v. Felton*, 811 F.2d 190, 200 (3d Cir.1987) (*en banc*).  This is consistent with Sixth Amendment jurisprudence, which recognizes that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."  *United States v. Claxton*, 766 F.3d 280, 293 (3d Cir. 2014) (internal quotation marks and citation omitted).  While there remains a possibility that the delays resulting from joinder could at some point prove too

11

extensive to be considered "reasonable" vis-a-vis Rainey and Dudenhoefer, the Court cannot say that it presently perceives a "serious risk" of the Moving Defendants' statutory speedy trial rights being violated in the absence of a severance.

### 2. Constitutional Rights Under the Sixth Amendment

The Moving Defendants' arguments fare no better under a Sixth Amendment analysis. The United States Supreme Court has recognized four factors that inform whether a defendant has been deprived of his or her Sixth Amendment right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his/her right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 531 (1972). None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

The first factor ("length of delay") involves "a double enquiry":

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because ... the presumption that pretrial delay has prejudiced the accused intensifies over time.

*United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (quoting *Doggett v. United States*, 505 U.S. 647 (1992)). Stated differently, a district court "first decides whether the delay is long enough that it should trigger analysis of other *Barker* factors." *Id.* "If it is, the length of the delay is also separately weighed in the court's analysis of the remaining factors." *Id.*

Relevantly, the Supreme Court has observed that "postaccusation delay" approaching one year is sufficient to trigger further review of the *Barker* factors. *Doggett*, 505 U.S. at 652 n. 1." Here, the original indictment was filed in November 2021 and the operative superseding indictment was filed on May 10, 2022. ECF Nos. 1, 425. Thus, the delay in this case falls well short of a year, raising doubts as to whether a full *Barker* inquiry is even necessary. Regardless, the Government has prosecuted its case with "customary promptness" considering the scope of the alleged conspiracy that has been charged and the number of defendants that have been charged. *Velazquez*, 749 F.3d at 174; *see, e.g., United States v. Thompson*, 716 F. App'x 69, 72 (3d Cir. 2017) (delay involving 26 months of pretrial detention was "not so severe as to weigh heavily in favor of [the defendant], particularly since this case was part of a large-scale prosecution against a total of thirty-three defendants engaged in a complex drug distribution conspiracy"); *see also Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). As discussed, the conspiracy alleged in this case spans fourteen (14) years and involves twenty-one (21) named defendants. In light of these considerations, the delay that the Moving Defendants have experienced to date is not presumptively prejudicial.

In any event, the remaining *Barker* factors would readily satisfy any burden the Government might have to justify its delay in bringing Rainey and Dudenhoefer to trial. When considering the second factor (*i.e.* the reason for delay), the Court is required to calculate the delay attributable to each party and differentiate the delay caused by Defendant from that which is caused by the Government. *See Claxton*, 766 F.3d at 294. "'[D]elay caused by the defense weighs against the defendant." *Id.* at 295 (internal quotation marks and citation omitted). Delay caused by the Government is grouped into the following categories, each carrying different

weight: (1) "A deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the Government;" (2) "A more neutral reason such as negligence or overcrowded courts also weighs against the Government, though less heavily;" and (3) "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* (internal quotation marks and citation omitted).

Here, the original indictment was filed on November 9, 2021 and the Court set an arraignment date of December 2, 2021 for both Rainey and Dudenhoefer. On December 13, 2021, the Government filed a motion for a protective order because of the sensitive nature of the discovery that it would be producing. ECF No. 282. After responses were received, the Court granted the Government's motion on January 18, 2022. ECF No. 340. Any delay resulting from the Government's efforts to obtain a protective order must be considered valid and appropriate; however, the Court also notes that Rainey and Dudenhoefer filed the instant motions to sever only three days after the Government filed its motion for a protective order. ECF Nos. 294 and 295. Substantial briefing and a motion hearing ensued relative to those motions, prior to the Court taking them under advisement. Moreover, during this same time, various other co-Defendants sought continuances of the deadline for filing pretrial motions based on the Government's production of extensive discovery. As matters currently stand, almost none of the delay in this case is attributable to the Government and, to the extent any delay *can* be attributed to the Government, the Court finds that the Government has acted in good faith and with reasonable diligence, which "should serve to justify appropriate delay." *Claxton*, 766 F.3d at 295.

The third *Barker* factor requires the Court to consider whether and how a defendant asserts his speedy trial right. *Barker*, 407 U.S. at 531. Underlying this factor is the recognition

that "a defendant has some responsibility to assert a speedy trial claim[.]" *Id.* at 529. Because the instant motions were filed early in this case, the Court assumes that the third *Barker* factor would weigh in favor Rainey and Dudenhoefer.

The fourth factor for consideration in the *Barker* analysis is the prejudice suffered by the defendant. "This factor is to be assessed in light of certain of the interests which the speedy trial right was designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired." *United States v. Shulick*, 18 F. 4th 91, 102 (3d Cir. 2021) (internal quotation marks and citation omitted). Here, neither Rainey nor Dudenhoefer have been subjected to pretrial incarceration, eliminating the first concern.

Nor have Rainey and Dudenhoefer identified any specific prejudice to their respective defenses as a result of joinder-related delay. At most, they cite concerns that witnesses may potentially be unavailable at some later point in time, or their memories may fade. But these generalized concerns do not demonstrate a serious risk that the Moving Defendants will incur a violation of their Sixth Amendment rights. *See Shulick*, 18 F. 4th at 103 (defendant's nonspecific claim of prejudice was insufficient to demonstrate a Sixth Amendment violation where defendant merely pointed to the unavailability of a particular witness who had fallen ill without explaining what the witness's anticipated testimony would be or how it would have been favorable to the defense); *Hakeem v. Beyer*, 990 F.2d 750, 763 (3d Cir. 1993) ("General allegations that witnesses' memories have faded are insufficient to create prejudice . . . [Defendant] has not pointed to any evidence in the state record that shows the [witnesses] would have been able to corroborate his [alibi defense] . . . ."); *accord United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (defendant could not establish prejudice through "blanket statement" that a witness who

had died "could have supported defense assertions of innocence at trial"; defendant failed to indicate the "content and relevance of the lost testimony, and how its absence impaired [the] defense").

Rainey and Dudenhoefer also cite financial hardships and related stress stemming from their loss of standing and employability in their chosen professional field.  The Court is not unsympathetic to the Defendants' plight, but such generalized professional and financial hardships can be shown in a great many cases; if accepted as a *per se* basis for severance, these types of concerns could easily become the exception that swallowed the rule which otherwise favors the joinder of all alleged conspirators in a single trial.  *See Barker,* 407 U.S. at 533 (explaining that none of the four factors bearing on speedy trial consideration are "sufficient" for finding a violation, nor do they have "talismanic qualities"; thus the factors must be considered along with other relevant circumstances, and "courts must still engage in a difficult and sensitive balancing process").  In the context of this case -- which involves allegations of a complex criminal conspiracy, the Court must bear in mind that "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *United States v. Ewell*, 383 U.S. 116, 120 (1966) (citation omitted).

On balance, the *Barker* factors weigh against any suggestion that the Moving Defendants have suffered -- or are at serious risk of sustaining -- a violation of their Sixth Amendment speedy trial rights.  Reinforcing this conclusion is the Court's previous determination that the Defendants' statutory speedy trial rights have not been violated.  Notably, the protections of the Speedy Trial Act "exceed those of the Sixth Amendment, which does not require that a trial commence within a specified time." *United States v. Lattany*, 982 F.2d 866, 870 n.5 (3d Cir.

1992). Because the Speedy Trial Act "was enacted largely to make defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated.'" *United States v. Alvin*, 30 F. Supp. 3d 323, 340 (E.D. Pa. 2014) (quoting *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982), and citing other authority).  There are no unusual circumstances in this case to suggest that, despite the statutory 70-day trial clock remaining intact, the Moving Defendants' Sixth Amendment speedy trial rights were violated. Accordingly, the Moving Defendants' first basis for a severance is unavailing.

C.  Fairness Concerns Stemming from a Joint Trial with More Culpable Co-Defendants

The Moving Defendants next posit that they will be unfairly prejudiced by a joint trial that includes co-Defendants with greater culpability and different roles in the alleged conspiracy. In particular, the Moving Defendants contend that most of the overt acts of the alleged conspiracy relate to the company's billing activities, the devising of company-wide policies and practices, document management, and allegedly illegal bonus structures -- matters in which the Moving Defendants claim they were not involved.  Anticipating that the Government's case at trial will focus on diffuse overt acts rather than a single overarching agreement, the Moving Defendants contend that a consolidated trial will undoubtedly result in a prejudicial spillover effect because the jury will be confused and unable to fairly assess the evidence for each accused individual.  They worry, for example, that evidence relating to the company's finances or the spending habits of Hertel & Brown's owners will result in the jury wrongly attributing such evidence to themselves, leading the jury to conclude that their involvement in the alleged scheme was greater than is actually alleged.  They dispute that a limiting instruction will sufficiently ameliorate the risk of unfair prejudice.

17

Having fully considered the Moving Defendants' arguments in this regard, the Court finds them unpersuasive. In assessing whether claims of prejudice justify a severance, courts consider "whether the jury can reasonably be expected to compartmentalize the evidence against each defendant." *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992) (citing *Eufrasio*, 935 F.2d at 568). Here, the Government asserts that its case will largely depend on documentary evidence, including emails and billing records, that can be directly linked to specific Defendants. The Government also represents that various Defendants have given statements which may be introduced at time of trial. The jury will be instructed to separately consider the evidence against each Defendant as to pertains to each of the offenses charged. The Court will further instruct the jury that its decision as to any one defendant should not influence its decision relative to any of the other defendants. This Court is confident that a jury can and will follow those instructions. *See United States v. Staton*, 605 F. App'x 110, 115 (3d Cir. 2015) (noting that "[j]urors are presumed to follow [the court's] instructions") (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Based on the nature of the alleged conspiracy and the type of proof that the United States intends to rely on for its case in chief, the Court is confident that the jury will be able to properly compartmentalize and assess the evidence as it relates to the charges against each individual Defendant.

Dudenhoefer contends in his supplemental filing that a joint trial will inevitably result in legal prejudice in the form of limitations on his ability to cross-examine Government witnesses or to call witnesses on direct examination because the Court is likely to view such evidence as cumulative given the number of co-Defendants in this case. He expresses related fears that there will be an "unavoidable impact of off-stage information on the jury" for the same reason. ECF No. 397 at 2 n.2. But this line of argument is highly speculative, especially given the

18

Government's representation that some Defendants have already begun to cooperate, raising the possibility that certain individuals charged in this case may ultimately enter guilty pleas and thereby reduce the number of Defendants that are ultimately tried together. Speculation and generalized allegations of prejudice are, of course, insufficient bases for a Rule 14 severance. *See Staton*, 605 F. App'x at 114 (defendant's "mere[ ] speculat[ion] that the jury must have interchangeably applied the evidence presented on the various counts" was "precisely the kind of generalized allegation of prejudice that we have found insufficient") (alterations in the original; internal quotation marks and citations omitted). Moreover, the Court has broad latitude in shaping courtroom procedure in a way that will ensure the rights of the accused are protected. *See United States v. Brown,* 849 F.3d 87, 92 (3d Cir. 2017) (noting that Rule 14's language, "[p]ermitting courts to 'provide any other relief that justice requires' affords great latitude to trial courts to craft remedies that fit the circumstances of each case").

At most, the Moving Defendants have shown only that a severance may improve their chances for a favorable verdict. But "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Nor is a severance required "merely because evidence against a co-defendant is more damaging than the evidence against the moving party." *United States v. Walker*, 657 F.3d 160, 170 (3d Cir. 2011). Accordingly, the Moving Defendants' arguments as to possible "spillover prejudice" fail to satisfy their "heavy burden" of showing that the denial of a severance would constitute an abuse of discretion and "would lead to clear and substantial prejudice resulting in a manifestly unclear trial." *Brown*, 849 F.3d at 92.

    D.  <u>The Right to Confront Adverse Witnesses</u>

Moving Defendants also contend that a joint trial jeopardizes their Sixth Amendment right to confront adverse witnesses. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). The specific danger they cite is that an out-of-court statement offered by a non-testifying co-Defendant may implicate one or more of them in criminal activity, impairing their ability to cross-examine the declarant in violation of the principles discussed in *United States v. Bruton*, 391 U.S. 123 (1968), and *Gray v. Maryland,* 523 U.S. 185 (1998). As described by Defendant Johnson, "the Confrontation Clause is violated when a non-testifying codefendant's statement is introduced that names another co-defendant . . . or that refers directly to the existence of the co-defendant in a manner that is directly accusatory." ECF No. 297 at 9 (citing *Washington v. Sec'y Dept. of Corrs.,* 801 F.3d 160, 167-68 (3d Cir. 2015)).

The Government responds that the evidence against these Defendants is strong, even without reliance on out-of-court statements from the other co-Defendants. As to Defendant Rainey, the Government represents that it is prepared to offer evidence of numerous instances where she billed more hours in a given day than was logically possible or billed for one-on-one treatments that were not provided. The Government asserts that Rainey repeatedly utilized unlicensed employees to treat patients and then billed insurance companies as though the treatment had been performed by her and, in similar fashion, authorized employees to bill for treatment using her name and credentials without having any actual involvement in the treatment.

With respect to Dudenhoefer, the Government alleges that he billed numerous "impossible" days and submitted "many fraudulent billing claims." ECF No. 321 at 4. The Government also claims to have evidence involving Dudenhoefer's manipulation of medical

records in furtherance of the alleged conspiracy.  As with Rainey, the Government alleges that Dudenhoefer claimed certain treatments performed by others as his own and authorized other Hertel & Brown employees to bill under his name and with his credentials, when he had no actual involvement in the treatment sessions.  According to the Government, Dudenhoefer was interviewed during the investigation and admitted to these practices and the fact that his user name and password were published on a sticky note, thereby allowing other employees to use his credentials when documenting their own treatment sessions.

Similarly, the Government alleges that Johnson billed numerous "impossible" days and signed "fraudulent" billing claims where she signed the treatment note and indicated the duration of the treatment prior to the treatment being provided.  ECF No. 321 at 5.  The Government claims that Johnson, like the other Moving Defendants, billed for one-on-one treatment when no such treatment was performed and utilized unlicensed personnel to perform treatment and then bill under her credentials, even when she was not present for the treatment in question.  According to the Government, Johnson has made statements admitting that she personally billed treatments performed by others, including unlicensed personnel, as if they had been performed by her and that she also billed group therapy sessions as individual treatments.

Regardless of this proffer, however, the Court is not presently persuaded that joinder of all Defendants in a single trial will present a serious risk to the Moving Defendants of a Sixth Amendment violation.  Importantly, none of the movants has yet identified a specific statement that presents a *Bruton* problem.[5]  As discussed, speculation and generalized assertions of

---

[5] Dudenhoefer acknowledges this fact but submits that it is impossible for him to identify such a statement because the Government has not yet produced the grand jury testimony or law enforcement reports that may contain potential *Bruton* statements.  In an effort to more robustly address potential *Bruton* problems, Dudenhoefer suggests that this Court undertake an *in camera*

prejudice are not sufficient to support a Rule 14 severance. *See United States v. Brown*, No.

3:CR-20-108, 2021 WL 2778629, at *6 (M.D. Pa. July 2, 2021) (defendant who did not identify

any incriminating statements made by a co-defendant had presented "nothing more than

speculation about potential *Bruton* issues," which "does not provide a reason for severance").

In any case, not all potentially incriminating out-of-court statements implicate Sixth

Amendment concerns.  For example, the Confrontation Clause is not violated by a non-testifying

co-defendant's admission which is not facially incriminating to the defendant and which

"[becomes] so only when linked with evidence introduced later at trial."  *Richardson v. Marsh*,

481 U.S. 200, 208 (1987); *see United States v. Fredericks*, 684 F. App'x 149, 158 (3d Cir. 2017)

(discussing *Richardon*).  In addition, non-testimonial out-of-court statements by a co-defendant

do not implicate *Bruton* and may be admissible against other defendants under the Federal Rules

of Evidence governing admission by a party opponent -- specifically, statements offered by a co-

conspirator in furtherance of an alleged conspiracy.  *See Bourjaily v. United States*, 483 U.S.

171, 182-83 (1987) (holding that the admission of a non-testifying co-conspirator's statement

against a defendant does not offed the Confrontation Clause as long as the statement satisfies the

co-conspirator exclusion of Federal Rule of Evidence 801(3)(2)(E)); *United States v. Berrios*,

676 F.3d 118, 128 (3d Cir. 2012) ("Any protection provided by *Bruton* is . . . only afforded to the

same extent as the Confrontation Clause, which requires that the challenged statement qualify as

testimonial."); *United States v. Jones*, 381 F. App'x 148, 151 (3d Cir. 2010) (applying *Bourjaily*

and holding that trial court's admission of co-conspirator's statements, made in furtherance of a

---

review of any co-Defendant statements or order the Government to produce such statements to
his attorney.  The Court declines Dudenhoefer's invitation at this time, as it is confident that any
potential Sixth Amendment problems can be appropriately resolved at a point closer to trial,
most likely through motions *in limine*.

conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E) did not violate the Confrontation Clause). *Bruton* also is not implicated, of course, if any *testifying* co-Defendant's out-of-court statement is admitted at trial, since the Moving Defendants will have the opportunity to cross-examine their co-Defendant concerning the subject statement. *See United States v. Johnson*, Case No. 3:CR-21-143, 2022 WL 2657113, at *6 (M.D. Pa. July 8, 2022) (observing that "if either co-defendant testifies against the other defendant, the non-testifying defendant will have her/his 6th Amendment right of confrontation since she/he will be able to cross-exam the co-defendant at trial"). Finally, *Bruton* issues are less likely to arise in a case such as this where, potentially, many co-Defendants may ultimately be tried together. *See, e.g., Priester v. Vaughn*, 382 F.3d 394 (3d Cir. 2004) (habeas petitioner's Sixth Amendment rights were not violated by trial court's admission of co-defendant's out-of-court statement referencing "the other guy," "someone," "someone else," "the guy," and "another guy" in relation to underlying crimes involving shots fired into a crowd; since at least fifteen perpetrators were involved in the shooting, references to "the other guy" or "another guy" were "bereft of any innuendo that tie[d] them unavoidably to [the petitioner].").

Ultimately, if the Government intends to introduce statements at trial of a non-testifying co-Defendant that raises *Bruton* issues, the Court will presumably be able to ameliorate any Sixth Amendment concerns through proper redaction or, if necessary, precluding admission of the statement altogether. *See Richardson*, 481 U.S. at 211 (holding that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when the confession is redacted to eliminate the defendant's name as well as any reference to his or her existence); *U.S. v. Bhimani*, 492 F. Supp. 3d 376, 385 (M.D. Pa. 2020) ("[T]he Confrontation Clause is not violated by the admission of a non-testifying co-defendant's

confession with a proper limiting instruction and redaction of the co-defendant's statement.") (internal quotation marks and citation omitted).  The Moving Defendants' arguments to the contrary are unpersuasive.

## IV.   CONCLUSION

After careful consideration of the arguments propounded by the Moving Defendants, the Court is not persuaded that there is a serious risk that a joint trial would compromise a specific trial right of one of the Moving Defendants or prevent the jury from making a reliable judgment about their respective guilt or innocence.  *See Zafiro*, 506 U.S. at 539; *Urban*, 404 F.3d at 775. In reviewing the pending motions, the Court has weighed the potential for prejudice to the Moving Defendants from joinder against the conservation of judicial resources that joinder will occasion.  At this point in time at least, the latter interest outweighs the former.  Accordingly, the Moving Defendants have not met their "heavy burden" of demonstrating that the denial of a severance would constitute an abuse of discretion and "would lead to clear and substantial prejudice resulting in a manifestly unfair trial."  United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005).

Based upon the foregoing reasons, the Defendants' motions for severance will be denied. An appropriate Order follows.

Susan Paradise Baxter
United States District Judge